# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **RICKY LEE HAYES,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09cv00043 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Ricky Lee Hayes, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq*. (West 2003 & Supp. 2009). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."

*Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Hayes protectively filed his applications for DIB and SSI on August 10, 2006, alleging disability as of May 23, 2006, due to arthritis in the lower back and hips, breathing difficulties, hypertension, hemorrhoids and depression. (Record, ("R."), at 13, 101-03, 106-09, 123, 150.) The claims were denied initially and on reconsideration. (R. at 61-63, 67, 70-74.) Hayes then requested a hearing before an administrative law judge, ("ALJ"), which was held on May 14, 2008, and at which he was represented by counsel. (R. at 24-56, 75.)

By decision dated July 25, 2008, the ALJ denied Hayes's claims. (R. at 13-23.) The ALJ found that Hayes met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2010. (R. at 15.) The ALJ also found that Hayes had not engaged in substantial gainful activity since May 23, 2006, the alleged onset date. (R. at 15.) The ALJ determined that the medical evidence established that Hayes suffered from severe impairments, namely hypertension, chronic lumbar and sacroiliac strain, chronic obstructive pulmonary disease, degenerative joint disease of the knees and left hip and degenerative joint disease of the left wrist, but he found that Hayes did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15-17.) The ALJ found that Hayes had the residual functional capacity to perform light work[1] limited by an occasional ability to push and pull with the lower extremities for

_____

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also

the operation of foot controls, an occasional ability to climb ramps and stairs, to kneel, crouch, bend and stoop and an inability to climb ladders, ropes or scaffolds, to crawl or to be around concentrated exposure to vibration, hazards, odors, fumes, dust, chemicals and gases. (R. at 17.) The ALJ found that Hayes was unable to perform any of his past relevant work. (R. at 21.) Based on Hayes's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Hayes could perform, including jobs as a cashier, a product inspector/grader and a packer. (R. at 22.) Thus, the ALJ found that Hayes was not under a disability as defined under the Act and was not eligible for benefits. (R. at 22-23.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2009).

After the ALJ issued his decision, Hayes pursued his administrative appeals, (R. at 7), but the Appeals Council denied his request for review. (R. at 1-5.) Hayes then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2009). The case is before this court on Hayes's motion for summary judgment filed December 30, 2009, and the Commissioner's motion for summary judgment filed January 29, 2010.

## II. Facts[2]

Hayes was born in 1962, (R. at 101), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). He completed the tenth grade,

---

can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2009).

[2]On appeal, Hayes contests only the ALJ's finding regarding the severity of his mental impairments. Thus, only the evidence relevant to this finding is included herein.

but later obtained a general equivalency development, ("GED"), diploma. (R. at 29, 129.) He has past relevant work experience as an underground coal miner. (R. at 29, 124.) Hayes testified that he stopped working two years prior to the hearing due to back, hip and knee pain. (R. at 30-31.) Specifically, he testified that he lost his job after being restricted by his doctor to light work. (R. at 44-45.) Hayes stated that his inability to work made him feel like a "bum," which had affected his ability to deal with other people, to deal with stress and to focus and concentrate. (R. at 40-41.) Hayes reported difficulty sleeping, for which he was taking medication. (R. at 41.) He stated that he played softball and golf in the past, but could no longer do so. (R. at 42-43.) Hayes stated that the only fun he had was playing with his young grandchildren. (R. at 42.)

Hayes testified that he spent his days mostly lying on the couch watching television. (R. at 45.) He stated that none of his treating physicians had placed any restrictions on him and that he had a valid driver's license. (R. at 46.) Hayes testified that he attended one mental health counseling session at Stone Mountain Health Services in 2007, but did not return until March 2008. (R. at 47.) Hayes explained this gap in treatment by saying that he could not afford "to just run . . . to the doctor all the time. . . ." (R. at 47.) He stated that in March 2008, he felt like he needed to return to counseling, but he could not recall if his attorney had suggested that he do so prior to his disability hearing. (R. at 47-48.)

Robert Jackson, a vocational expert, also was present and testified at Hayes's hearing. (R. at 48-55.) Jackson classified Hayes's work as a shuttle car operator as

medium[3] and semiskilled, his job as a scoop operator as medium and skilled and his job as a general underground miner as very heavy[4] and skilled. (R. at 50.) Jackson testified that none of Hayes's skills would transfer to any work at the light or sedentary[5] level of exertion. (R. at 50.) Jackson was asked to consider a hypothetical individual of Hayes's age, education and past work experience who could perform light work with an ability to occasionally push and/or pull with the lower extremities, such as for the operation of foot controls, to climb ramps and stairs, to crouch, to kneel, to stoop and to bend, who could frequently balance and who could never climb ladders, ropes or scaffolds, who could never crawl and who should avoid concentrated exposure to vibrations, hazards, fumes, odors, dusts and gases. (R. at 50-51.) Jackson testified that such an individual could not perform any of Hayes's past work. (R. at 51.) However, Jackson testified that such an individual could perform light jobs existing in significant numbers in the national economy, including those of a cashier, a production inspector/grader and a packer. (R. at 51.) When Jackson next was asked to consider the same individual, but who could perform only simple work, he stated that such an individual could perform the jobs already enumerated. (R. at 52.) Next, Jackson was asked to consider the same individual, but who required a sit/stand

---

[3]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If someone can do medium work, he also can do light and sedentary work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2009).

[4]Very heavy work involves lifting items weighing more than 100 pounds at a time with frequent lifting or carrying of items weighing 50 pounds or more. If someone can do very heavy work, he also can do heavy, medium, light and sedentary work. *See* 20 C.F.R. §§ 404.1567(e), 416.967(e) (2009).

[5]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying items like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing often is necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2009).

option, allowing him to change positions approximately every 30 minutes. (R. at 52.) He stated that there would be fewer cashier positions available, but a significant number would remain, and the individual could not perform the inspector or packer jobs. (R. at 52.) However, Jackson testified that such an individual could perform the jobs of a courier/messenger at the light level of exertion, as well as a parking lot attendant, both jobs existing in significant numbers in the national economy. (R. at 52.) Jackson next testified that an individual who had a poor ability to deal with work stresses could not work. (R. at 53.) Likewise, he testified that an individual with a poor ability to function independently could not work. (R. at 53.) Jackson stated that an individual with a poor ability to deal with the public, to interact with supervisors and to relate to co-workers also could not work. (R. at 53.) He testified that an individual with a poor ability to maintain personal appearance or an individual with a poor ability to behave in an emotionally stable manner in the work place could not work. (R. at 53.) Jackson testified that an individual with a poor ability to relate predictably in social situations in the workplace might be able to perform some cleaning jobs that would allow him to work alone. (R. at 53.) Finally, Jackson testified that an individual with a poor ability to demonstrate reliability could not perform any jobs. (R. at 53-54.)

When asked about an individual who had to lie down up to two to three hours per day for pain relief, as testified to by Hayes, Jackson testified that such an individual could not perform any jobs, noting that a need to take unscheduled work breaks throughout the day was not consistent with competitive employment. (R. at 54.) Jackson testified that an individual with a fair ability to relate to co-workers, to deal with the public, to interact with supervisors, to deal with work stresses, to function independently and to demonstrate reliability would have a difficult time

maintaining employment. (R. at 54.) Finally, Jackson testified that absenteeism of one day per month typically was permitted in the jobs identified. (R. at 55.)

In rendering his decision, the ALJ reviewed records from Norton Community Hospital; Mountain View Regional Medical Center; Wise Medical Group; Dr. William Humphries, M.D.; Dr. Robert McGuffin, M.D., a state agency physician; Dr. Richard Surrusco, M.D., a state agency physician; Wise County Behavioral Health Services; Stone Mountain Health Services; Coeburn Family Health Center and; William J. Hamil, ME.d., L.S.P.E. Hayes's attorney also submitted additional medical records from Stone Mountain Health Services and Lab Corp to the Appeals Council.[6]

Hayes saw Dr. William Humphries, M.D., on December 19, 2006, for a consultative examination at the request of the Virginia Department of Rehabilitative Services. (R. at 261-65.) Mental status examination revealed that Hayes was alert and fully oriented, and his behavior was deemed appropriate for the examination. (R. at 263.) Thought and idea content were within normal limits, and Hayes's memory was intact for recent and remote events. (R. at 263.) Dr. Humphries opined that Hayes was functioning in the normal range of intelligence. (R. at 263.) His affect and grooming were appropriate for the examination, and Dr. Humphries opined that Hayes should be able to handle his own funds should they be awarded. (R. at 263.) Dr. Humphries imposed no mental limitations. (R. at 264.)

On July 12, 2007, Hayes saw Rebecca Mullins, a nurse practitioner at Stone

---

[6]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 1-5), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Mountain Health Services, ("Stone Mountain"). (R. at 345.) Although the treatment note includes no complaints of depressive symptoms, Mullins diagnosed depression and prescribed Celexa. (R. at 345.) On August 3, 2007, Hayes was seen at Wise County Behavioral Health Services, ("WCBHS"), by Michael Halcomb, B.A., a case manager, for outpatient admission intake. (R. at 299-320.) Hayes presented with complaints of his "nerves [being] shot," and he reported feeling badly about not being able to work and contribute financially to his family. (R. at 299.) Hayes noted that he had not been troubled by depression or anxiety to such an extent and had never sought treatment before. (R. at 299.) Hayes reported enjoying softball and golf in the past, but was unable to participate in these activities and had no recreational activities. (R. at 303.) In particular, Hayes reported depression over his current situation and anxiety due to fear of losing his home and his health. (R. at 304.) He reported no prior psychiatric hospitalizations. (R. at 305.) Hayes reported a moderate decrease in energy or fatigue, moderate social withdrawal, anxiety, jitteriness, memory impairment, blunted or flat affect, helplessness, hopelessness, irritability, loss of interest or pleasure and tearfulness. (R. at 308-10.) He reported mild panic attacks, racing thoughts, hallucinations, decreased appetite, anger and insomnia. (R. at 308-10.) Hayes reported severe worrying, depressed mood, feelings of worthlessness and low self-esteem. (R. at 308-10.) Halcomb diagnosed Hayes with a major depressive disorder, and he assessed his then-current Global Assessment of Functioning, ("GAF"), score at 40,[7] with the highest and lowest for the previous six months also being 40. (R. at 312.) Individual psychotherapy at least once monthly was

---

[7]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF score of 31 to 40 indicates "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. . . ." DSM-IV at 32.

recommended. (R. at 314-15.) When Hayes returned to Stone Mountain on August 9, 2007, Mullins again diagnosed depression, and Mullins doubled his dosage of Celexa. (R. at 344.)

Hayes returned to WCBHS for individual counseling with Halcomb on September 4, 2007. (R. at 321.) At that time, he reported increased feelings of depression and chronic worry, stating that his vehicle had broken down, he owed money to the IRS and his wife's wages might be garnished to pay outstanding hospital bills. (R. at 321.) Hayes's mood was depressed, and his affect was flat. (R. at 321.) He reported that he was experiencing more worry than depression. (R. at 321.) Hayes reported no suicidal or homicidal ideations or hallucinations. (R. at 321.) On December 4, 2007, Hayes again was seen at Stone Mountain. (R. at 329-32.) Evaluation of Hayes's mental status at that time was unremarkable, revealing that he was fully oriented and had normal memory, mood and affect, as well as judgment and insight. (R. at 330.) He noted that he was sleeping better since initiating Celexa. (R. at 329.) Hayes was diagnosed with depression, among other things. (R. at 331.) On February 12, 2008, Hayes returned to Stone Mountain with complaints of insomnia and sadness, despite reporting that Celexa had improved his symptoms of depression. (R. at 326-28.) Hayes noted that he was scheduled for a disability hearing in May. (R. at 326.) Evaluation of Hayes's mental status again was unremarkable, revealing full orientation, normal memory, mood and affect and judgment and insight. (R. at 327.) Hayes was diagnosed with depression, among other things, and he was prescribed amitriptyline in place of Celexa. (R. at 328.)

On March 5, 2008, Hayes returned to WCBHS for an "access screening" with James D. Kegley, M.S. (R. at 398-99.) Hayes reported staying "edgy and irritated all

the time." (R. at 399.) He reported depression regarding his marriage and his inability to work, and he noted an upcoming disability hearing in May. (R. at 399.) Hayes also reported insomnia without medication and irritability with some tearfulness. (R. at 399.) He denied audiovisual hallucinations, as well as suicidal or homicidal ideations. (R. at 399-400.) Kegley provisionally diagnosed depressive disorder, not otherwise specified, he assessed Hayes's then-current GAF score at 50,[8] and he recommended outpatient counseling. (R. at 400.)

On March 15, 2008, Hayes saw William J. Hamil, M.Ed., licensed senior psychological examiner, for a psychological evaluation at the request of his attorney. (R. at 353-58.) Hayes reported depression the previous two years due to losing his job as a coal miner. (R. at 354.) He reported isolating himself, difficulty handling stress and loss of interest in activities previously enjoyed. (R. at 354.) He further noted difficulty sleeping, for which he took medicine, and feelings of worthlessness. (R. at 354.) Hayes denied any psychiatric hospitalizations, but stated that he had received outpatient mental health treatment at WCBHS for approximately the previous year. (R. at 355.) Hayes made appropriate eye contact, his hygiene and grooming were adequate, and Hamil opined that he was not exaggerating his symptoms for the purpose of gaining disability benefits. (R. at 355.) Hayes's affect was "appropriate to the situation, stable, full range, normal intensity, congruent to content, and fully reactive." (R. at 355.) No looseness of associations or other symptoms of formal thought disorder were present, and Hayes denied suicidal or homicidal ideation, hallucinations or delusions, obsessions or phobias. (R. at 355.) Hayes was fully oriented, and his attention and concentration were intact, as were his short-term, recent

---

[8]A GAF score of 41 to 50 indicates "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning. . . ." DSM-IV at 32.

and remote memory. (R. at 355.) Hayes's insight and judgment were deemed adequate.  (R. at 355.)

Hamil administered the Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), on which Hayes obtained a verbal IQ score of 89, a performance IQ score of 80 and a full-scale IQ score of 84, placing him in the low average range of intellectual functioning. (R. at 355-56.) Hamil also administered the Minnesota Multiphasic Personality Inventory-Second Edition, ("MMPI-2"), the results of which indicated social introversion, tendency to worry a great deal, experience irritability, anxiety, moodiness, guilt, brooding and unhappiness with episodes of depression.  (R. at 356.)  The results of this psychological testing were deemed valid. (R. at 355-56.) Hamil noted that Hayes related well to him, but he opined that Hayes's interpersonal skills were fair to poor. (R. at 357.) He further opined that Hayes could manage benefits if awarded to him. (R. at 357.) Hamil opined that Hayes could follow both simple and somewhat detailed job instructions and perform simple and repetitive tasks.  (R. at 358.) His concentration and persistence were deemed adequate.  (R. at 358.) Hamil found that Hayes had a markedly unsatisfactory ability to interact with others, especially in accepting instructions from supervisors and interacting with co-workers and the public in an appropriate manner, as evidenced by a desire to be alone, as well as by apathy or feelings of worthlessness. (R. at 358.)  Hamil further found that Hayes was markedly limited in his ability to deal with the usual stress of competitive work, to adapt to changes in the workplace, to be aware of normal hazards and to take appropriate precautions due to stress sensitivity.  (R. at 358.)  Hamil opined that Hayes's mood and physical problems might markedly detract from his ability to maintain regular attendance, to perform work activities on a consistent basis, to perform work activities without special or additional supervision and to meet an

employment schedule such as completing a normal workday or workweek without interruption. (R. at 358.) Hamil opined that Hayes's prognosis was guarded, and he recommended continued mental health counseling and medication management by a psychiatrist. (R. at 358.) Hamil diagnosed major depressive disorder, single episode, moderate, and he assessed Hayes's then-current GAF score at 50. (R. at 358.)

The same day, Hamil completed an Assessment Of Ability To Do Work-Related Activities (Mental), finding that Hayes had a good ability to follow work rules, to maintain attention and concentration and to understand, remember and carry out both detailed and simple job instructions. (R. at 359-61.) Hamil further found that Hayes had a poor ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to function independently, to understand, remember and carry out complex job instructions, to maintain personal appearance, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 359-60.) Hamil noted that he based these findings on Hayes's low average intelligence, stress sensitivity and apathy. (R. at 359-60.) Hamil opined that Hayes would miss more than two work days monthly due to his impairments. (R. at 361.)

On March 24, 2008, Hayes returned to Stone Mountain for a routine checkup. (R. at 363-65.) He noted that his sleep was improved with amitriptyline and that he was better able to cope. (R. at 363.) Mental status examination was unremarkable, revealing full orientation, normal memory, mood and affect and judgment and insight. (R. at 364.) He was diagnosed with depression, among other things. (R. at 365.)

Hayes was seen by Kegley for intake once again at WCBHS on March 25,

2008, for depression or mood disorder due to multiple life stressors. (R. at 367-394, 397.) He reported no prior psychiatric service.(R. at 368.) He further reported no leisure activities, but stated that he was able to complete all activities of daily living and independent living without assistance. (R. at 371-72.) Outpatient counseling was again recommended. (R. at 375.) Hayes endorsed mild social withdrawal, irritability and tearfulness. (R. at 376, 378.) He reported moderate decrease in energy or fatigue, apathy, depressed mood, feelings of worthlessness, helplessness and hopelessness, loss of interest or pleasure and low self-esteem. (R. at 376, 378.) Kegley diagnosed an adjustment disorder with depression, and he rated Hayes's then-current GAF score at 50, noting that his highest and lowest GAF scores within the previous six months also were 50. (R. at 380.) Hayes agreed to both individual and group psychotherapy on a bi-weekly basis. (R. at 382, 393.) Hayes returned for counseling with Kegley on April 14, 2008. (R. at 396.) At that time, his mood was mildly depressed with congruent affect. (R. at 396.) Kegley opined that Hayes would be a good candidate for the Life Changes group in the future. (R. at 396.) Hayes again saw Kegley for counseling on April 29, 2008, at which time he reported getting further behind in his bills, despite financial help from his son. (R. at 395.) His mood was moderately depressed with congruent affect. (R. at 395.) Hayes was encouraged to develop some leisure activities. (R. at 395.) Kegley again noted that he would be a good candidate for future Life Changes group participation. (R. at 395.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2009); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This

process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2009).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2009); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated July 25, 2008, the ALJ denied Hayes's claims. (R. at 13-23.) The ALJ found that Hayes had not engaged in substantial gainful activity since May 23, 2006, the alleged onset date. (R. at 15.) The ALJ determined that the medical evidence established that Hayes suffered from severe impairments, namely hypertension, chronic lumbar and sacroiliac strain, chronic obstructive pulmonary disease, degenerative joint disease of the knees and left hip and degenerative joint disease of the left wrist, but he found that Hayes did not have an impairment or

combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15-17.) The ALJ found that Hayes had the residual functional capacity to perform a limited range of light work. (R. at 17.) The ALJ found that Hayes was unable to perform any of his past relevant work. (R. at 21.) Based on Hayes's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that Hayes could perform. (R. at 22.) Thus, the ALJ found that Hayes was not under a disability as defined under the Act and was not eligible for benefits. (R. at 22-23.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ

may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.  Hayes argues that the ALJ erred by failing to find that he suffered from a severe mental impairment.  (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 6-8.)

The ALJ found that Hayes suffered from the following severe impairments: hypertension, chronic lumbar and sacroiliac strain, chronic obstructive pulmonary disease, degenerative joint disease of the knees and left hip and degenerative joint disease of the left wrist. (R. at 15.) However, the ALJ found that Hayes's mental impairments were nonsevere. (R. at 16.)  Based on my review of the record, I find that substantial evidence exists to support such a finding.

The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2009). In the context of a mental impairment, basic work activities include understanding, carrying out and remembering simple job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routing work setting.  *See* 20 C.F.R. §§ 404.1521(b), 416.921(b) (2009).  The Fourth Circuit held in *Evans v. Heckler*, that "'"[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."'" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724

F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

In arriving at the conclusion that Hayes's mental impairments were nonsevere, the ALJ gave little weight to the opinion of psychologist Hamil, stating that these opinions were offered after only one examination, conducted at the request of Hayes's attorney, and were not based on treatment for any length of time. (R. at 20.) Moreover, the ALJ found that Hamil's opinions were based on Hayes's subjective complaints. (R. at 20.) While I note that referral by counsel and a one-time examination are not grounds, in and of themselves, to reject an examiner's opinion, they are relevant factors to consider. I disagree, however, with the ALJ's statement that Hamil's opinions were based on Hayes's subjective complaints. It is obvious that, while Hayes's subjective complaints were considered, as they should have been, Hamil also conducted a mental status examination, in addition to administering objective psychological testing, including the WAIS-III and the MMPI-2, the results of both of which were deemed to be valid. (R. at 355-56.) Nonetheless, I find that substantial evidence supports the ALJ's weighing of the evidence because Hamil's report is internally inconsistent and also is inconsistent with the assessment he completed the same day. Specifically, despite Hamil's finding that Hayes made appropriate eye contact and related well to him, even though this was a one-time examination, he opined that Hayes's interpersonal skills were only fair to poor. (R. at 355, 357.) Later in the report, Hamil indicated that Hayes's ability to interact with others was "markedly unsatisfactory." (R. at 358.) Also in his report, he noted that Hayes's grooming and hygiene were adequate. (R. at 355.) However, in the accompanying mental assessment, he opined that Hayes's ability to maintain personal appearance was poor. (R. at 360.) Moreover, in the report, Hamil noted that Hayes's insight and judgment were adequate, but in the assessment, he found his ability to use

judgment to be poor.  (R. at 355, 359.)  For the reasons that follow, I further find that Hamil's opinions are contradicted by the other substantial evidence of record.

Although Hayes was diagnosed with depression, (R. at 328, 331, 344-45, 365), major depressive disorder, (312, 358), depressive disorder, not otherwise specified, (R. at 400), and adjustment disorder with depression, (R. at 380), no limitations were imposed on Hayes's work-related mental abilities by any source other than Hamil. For instance, despite diagnosing Hayes with major depressive disorder upon intake at WCBHS on August 3, 2007, no restrictions were imposed on Hayes.  (R. at 299-320.)  Likewise, again at intake at WCBHS on March 25, 2008, Kegley diagnosed adjustment disorder with depression.  (R. at 367-94, 397). Nonetheless, no restrictions were imposed upon Hayes's work-related mental abilities.  Furthermore, mental status examinations performed on February 12, 2008, and March 24, 2008, at Stone Mountain, as well as mental status examination performed by Dr. Humphries on December 19, 2006, were unremarkable, revealing full orientation, normal memory, normal mood and affect and normal judgment and insight. (R. at 263, 327, 364.)  Also, Hayes has reported no previous psychiatric hospitalizations and, despite Hayes's complaints of depression and anxiety, the record shows that his symptoms improved with medication.  In December 2007, Hayes reported improved sleep with Celexa. (R. at 329.)  On  February 12, 2008, Hayes again reported improved symptoms of depression with Celexa. (R. at 326.)  Finally, on  March 24, 2008, he again reported improved sleep with amitriptyline, as well as better coping abilities.  (R. at 363.) The record also shows that Hayes's GAF score increased from 40 in August 2007 to 50 in March 2008. (R. at 312, 400.)   "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1165 (4th Cir. 1986). Finally, I note that despite Hayes's allegations of severe mental

impairments, he did not participate in mental health counseling as recommended. After intake at WCBHS in August 2007, he attended only one counseling session with his case manager. Thereafter, he presented for intake again in March 2008, just two months before his scheduled disability hearing. When questioned by the ALJ about his failure to follow through with counseling as recommended, Hayes testified as follows: "Well, buddy, I can't afford to just run, you know, to the doctor all the time, I mean, over, and over, and over." (R. at 47.) He further testified that he reinitiated mental health treatment in March 2008 because he felt like he needed to. (R. at 47.) Moreover, even at times when Hayes was not receiving mental health treatment, the notes from other medical sources do not include complaints of severe depression or anxiety. In fact, as noted above, some of these notes show that Hayes's mental impairments improved with medication.

For all of the above-stated reasons, I find that substantial evidence supports the ALJ's finding that Hayes did not suffer from a severe mental impairment.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the Commissioner's finding that Hayes did not suffer from a severe mental impairment; and

2. Substantial evidence exists to support the Commissioner's finding that Hayes was not disabled under the Act and was not entitled to DIB or SSI benefits.

# RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Hayes's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits. I further recommend that the court deny Hayes's request to present oral argument based on my finding that it is not necessary, in that the parties have more than adequately addressed the relevant issues in their written arguments.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2009):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:     May 12, 2010.

/s/     *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE